UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

WATERMARK FINANCIAL SERVICES GROUP, INC.,
WATERMARK M-ONE HOLDINGS, INC., M-ONE
FINANCIAL SERVICES, LLC, WATERMARK CAPITAL
GROUP, LLC, GUY W. GANE, JR., LORENZO
ALTADONNA, THOMAS BRICK, and
DEBORAH GALAS,

    Defendants,

and

GUY W. GANE, III, JENNA GANE, DENKON, INC., and
KONSTANTINOS SAMOUILIDIS,

    Relief Defendants.

08 CV 361S

**ORDER CREATING A FAIR FUND, APPOINTING
DISTRIBUTION AGENT AND ADOPTING DISTRIBUTION PLAN**

**WHEREAS,** the Court has entered the following judgments and orders requiring payments to the Court's Registry Fund:

1. *Order Fixing Amount of Disgorgement and Prejudgment Interest as to Defendant Lorenzo Altadonna,* entered April 4, 2011 (Dkt. 196), ordering Altadonna to pay disgorgement of $1,866,867.90, plus prejudgment interest of $205,486.37, for a total of $2,072,354.27;

2. *Final Judgment as to Defendants Guy W. Gane, Jr., Watermark Financial Services Group, Inc., Watermark M-One Holdings, Inc., M-One Financial Services, LLC, and Watermark Capital Group, LLC*, entered February 16, 2012 (Dkt. 202), ordering Gane

1

and the Watermark entities to be jointly and severally liable, along with Thomas Brick and Deborah Galas, for disgorgement of $5,835,425.70, reduced by payments made by other parties, for a total of $5,299,478.21, plus prejudgment interest of $788,979.68, for a total amount of $6,088,457.89;

3. *Order Fixing Amount of Disgorgement and Prejudgment Interest as to Defendants Thomas Brick and Deborah Galas,* entered February 16, 2012 (Dkt. 203), ordered that Brick and Galas are jointly and severally liable with the other defendants for disgorgement of $5,835,425.70, reduced by payments made by other parties, for a total of $5,299,478.21, together with prejudgment interest of $788,979.68, for a total of $6,088,457.89, and that Brick and Galas each pay civil penalties of $100,000; and

4. *Final Judgment as to Relief Defendants Konstantinos Samouilidis and Denkon Inc.*, entered February 16, 2012 (Dkt. 204), ordering that Samouilidis and Denkon are jointly and severally liable for disgorgement of $972,000, reduced by the amount previously paid, $482,545.17, for a total of $489,454.83, plus prejudgment interest of $67,184.29.

**WHEREAS**, pursuant to the aforementioned orders and judgments, as of April 11, 2013, the Court's Registry Fund in the Action contains $540,299.30; and

**WHEREAS**, the Court, having reviewed this *Order Creating a Fair Fund, Appointing Distribution Agent and Adopting Distribution Plan*, and upon all prior proceedings and submissions, and for good cause shown,

**IT IS HEREBY ORDERED THAT**, the Commission's Motion for an Order Creating a Fair Fund, Appointing a Distribution Agent, and Adopting a Distribution Plan (Docket No. 233) is GRANTED.

**IT IS FURHER ORDERED THAT:**

1. The Watermark Fair Fund ("Fair Fund") is hereby established pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002, as amended. The Watermark Fair Fund shall consist of all funds deposited into the Court Registry in connection with this action, inclusive of interest. The Watermark Fair Fund may also include funds received from any proceeding brought by the United States Attorney's Office relating to conduct arising from the same violations alleged in this action.

2. The Distribution Plan of the Fair Fund, set forth below, is hereby APPROVED.

3. David Stoelting, of the Enforcement Division of the Securities and Exchange Commission's New York Regional Office, is hereby APPOINTED as the Distribution Agent for the Fair Fund under this Distribution Plan.

## DISTRIBUTION PLAN OF THE WATERMARK FAIR FUND

### I. Overview

The Plan seeks to achieve the prompt, fair, and efficient allocation of the Fair Fund to those injured investors that suffered a loss as a result of their investment with Watermark Financial Services Group, Inc., Watermark M-One Holdings, Inc., M-One Financial Services, LLC, and/or Watermark Capital Group, LLC ("Watermark Entities"). An investor who has received back all of his or her initial investment is not entitled to any distribution under this Plan.

The Fair Fund includes all of the funds in the Registry Fund account established in this action and any other amounts that may be subsequently paid into that account, including the disgorgement, prejudgment interest, and civil penalty paid by the defendants, and any interest earned on such amounts.

The Distribution Agent has identified the injured investors based on the Commission's review and analysis of the records of the Watermark Entities. The Distribution Agent will notify

the injured investors that they may be entitled to a recovery from the Watermark Fair Fund and the amount of their total loss. An injured investor so notified who agrees with the amount of the loss does not have to do anything else in order to become eligible to recover from the Watermark Fair Fund. Those investors not satisfied with the determination, whether as to the amount of the recovery or as to their right to recover at all, or those investors who are not notified by the Distribution Agent that they may be entitled to participate in the distribution, will have the option of submitting a Proof of Claim Form. After evaluating all claims received, the Distribution Agent will make a final determination concerning investors entitled to recover from the Watermark Fair Fund and will provide the Court a report of its findings, including a list of investors entitled to recovery[1] and the portion of the funds that they will receive in the form of a check. The Distribution Agent will then request that the Court authorize the Clerk of the Court to prepare checks in the amounts determined by the Distribution Agent, and to mail those checks to the injured investors.

## II. Definitions

The following definitions shall apply to this Distribution Plan:

"**Action**" means the matter captioned *Securities and Exchange Commission v. Watermark Financial Services Group,* Inc., et al., 08 CV 361(S) (W.D.N.Y.).

"**Approved Claim**" means the final amount of an Eligible Claimant's claim that is ultimately approved pursuant to the Distribution Plan.

"**Available Distribution**" means the Fair Fund, less any amounts expended or to be expended for administering the Fair Fund (e.g., reasonable fees and expenses incurred or to be incurred in administering the Distribution Plan and the payment of taxes on the Fair Fund).

---

[1] All investor personal information, including names and other identifying information will be kept confidential in public filings.

"**Claims Packet**" means all the materials to be provided to Pre-Qualified Claimants, and to Potentially Eligible Claimants who request such, including a copy of the Distribution Plan Notice and Proof of Claim Form (together with instructions for completion of Proof of Claim Form).

"**Claims Bar Date**" means the date established in accordance with the Distribution Plan by which a Potentially Eligible Claimant must file a Proof of Claim Form to avoid the barring of any right of Potentially Eligible Claimants to participate in any distribution from the Fair Fund. It is also the date established in accordance with the Distribution Plan by which a Pre-Qualified Claimant may file a request for review of the determination of the investor's eligibility to participate in any distribution from the Fair Fund and/or the amount of the investor's Eligible Loss. The Claims Bar Date shall be no later than 90 days after the date of entry of an order approving the Distribution Plan.

"**Claim Deficiency Notice**" means the notice sent by the Distribution Agent to a Potentially Eligible Claimant or to a Pre-Qualified Claimant whose claim is deficient in one or more ways such as, for example, failure to provide required information or documentation. The Claim Deficiency Notice shall advise the claimant of the reason or reasons for the deficiency and the opportunity to cure such deficiency. A Claim Deficiency Notice shall be provided no later than 90 days after the Claims Bar Date.

"**Court**" means the United States District Court for the Western District of New York.

"**Covered Period**" means the period of time commencing on January 1, 2005 and continuing through May 15, 2008.

"**Days**" means calendar days.

"**Distribution Agent**" means David Stoelting, Senior Trial Counsel, Securities and Exchange Commission, 3 World Financial Center, Room 400, New York, NY 10281.

"**Distribution Plan Notice**" means the notice given to Pre-Qualified Claimants and Potentially Eligible Claimants of their potential right to participate in the distribution of the Fair Fund and whether they need to file a Proof of Claim Form in order to so participate. The Distribution Agent shall design the Distribution Plan Notice consistent with the provisions of the Distribution Plan, and such notice shall include, at a minimum, a description of the Watermark Entities scheme and the means of obtaining Claims Packets (including Proof of Claim Forms, instructions for submitting Proof of Claim Forms, and the Claims Bar Date).

**"Eligible Claimant"** means (a) any Pre-Qualified Claimant, (b) any Pre-Qualified Claimant that asserts a claim in a different amount than the amount identified by the Commission, which claim is allowed following the filing of a Proof of Claim Form, and (c) any Potentially Eligible Claimant with a claim allowed following the filing of a Proof of Claim Form. Eligible Claimant does not include, in any event:

- Any Watermark Investor that fully recovered the principal amount invested with Watermark Entities;
- Any defendant or relief defendant in the Action, and any heir, assign, distributee, spouse, parent, child, or relative of such defendant or relief defendant;
- Any present or former officer, director, or employee of the Watermark Entities, and any heir, assign, distributee, spouse, parent, child, relative, agent, attorney, or controlled entity of any present or former officer, director, or employee of Watermark; and
- Any Person who, on or before the Claims Bar Date was the subject of any criminal action or proceeding related to the violations alleged in the Commission's complaint in this

action, other than a Person fully found not guilty of any such criminal charges or as to whom any such criminal charges were fully dismissed with prejudice as of the Claims Bar Date, and any heir, assign, distributee, spouse, parent, child, relative, agent, attorney, or controlled entity of any such Person.

"**Eligible Loss**" means the amount of loss an Eligible Claimant has incurred through the investment with Watermark Entities during the Covered Period. The Eligible Loss shall be calculated using the methodology selected by the Distribution Agent. The Eligible Loss shall be the difference, if any, between the principal amount invested with the Watermark Entities during the Covered Period, less any amounts received back from the Watermark Entities. Amounts received by an investor from other sources, such as pursuant to judgments and restitution orders in related cases brought by the United States Attorney's Office, may also be taken into account. Any "reinvestment" of principal shall be disallowed for the purpose of calculating the Eligible Loss.

"**Person**" means natural individuals as well as legal entities including corporations, partnerships, associations, limited liability entities, and governmental entities. All nouns, pronouns, and any variations thereof in this Distribution Plan shall be deemed to refer to the masculine, feminine, neuter, singular, or plural as the context may require.

"**Potentially Eligible Claimant**" means any Watermark Investor who may have a claim to recover from the Fair Fund other than a Pre-Qualified Claimant.

"**Pre-Qualified Claimant**" means any Watermark Investor that the Distribution Agent has identified as potentially eligible for a distribution from the Fair Fund under the Distribution Plan and is not required to file a Proof of Claim Form in order to participate in the distribution. If a Pre-Qualified Claimant does not agree with the Eligible Loss amount pre-determined by the

Distribution Agent, such Person must file a Proof of Claim Form seeking the amount that Person claims.

"**Proof of Claim Form**" means the form designed by the Distribution Agent in accordance with the Distribution Plan for the filing of a proof of a claim, which form shall require, at a minimum, sufficient documentation reflecting an investment with the Watermark Entities during the Covered Period.

"**Public Notice**" means the notice published in a Buffalo, NY newspaper. Such notice shall include, at a minimum, a statement that the Watermark Fair Fund relates to investments with the Watermark Entities during the Covered Period and the means of obtaining a Claims Packet.

"**Tax Administrator**" means Damasco & Associates, LLP, the Court-appointed Tax Administrator in the Action pursuant to the *Order Appointing Tax Administrator* filed February 15, 2013 (Docket 227).

"**Watermark Entities**" means Watermark Financial Services Group, Inc., Watermark M-One Holdings, Inc., M-One Financial Services, LLC, and Watermark Capital Group, LLC.

"**Watermark Fair Fund**" means all amounts paid or to be paid into the Registry Fund in this matter, including accumulated interest. The Watermark Fair Fund may also include any funds received from any proceeding brought by the United States Attorney's Office related to conduct arising from the same violations alleged in this action.

"**Watermark Investor**" means any Person who invested funds with the Watermark Entities in connection with any offering alleged in the Amended Complaint during the Covered Period.

### III. Administration of the Claims Procedure

### A. General Administrative Provisions

The Distribution Agent shall oversee the administration of the claims, procedures, and distribution as provided in this Distribution Plan. The Distribution Agent shall review the claims of Potentially Eligible Claimants and Pre-Qualified Claimants, if any, and make determinations under the criteria identified in this Distribution Plan as to such claimants' eligibility to recover and the amount of money to be distributed from the Fair Fund to Eligible Claimants in accordance with the provisions of the Distribution Plan.

Any claim asserted by a Potentially Eligible Claimant or Pre-Qualified Claimant shall be in writing and shall provide adequate documentary evidence to substantiate the claim, including all documentary evidence which the Distribution Agent deems necessary or appropriate, including but not limited to available account statements, copies of checks paid and received, and investment certificates. All claims must be signed under penalty of perjury under the laws of the United States.

The proceeds of the Fair Fund will be paid to the Eligible Claimants who have been determined by the Distribution Agent to be eligible for a distribution from the Watermark Fair Fund pursuant to the Distribution Plan as adopted by the Court.

The Distribution Agent, with the assistance of the Clerk of Court in issuing checks, shall make *pro rata* distributions to Eligible Claimants taking into account each Eligible Claimant's Eligible Loss and the Available Distribution.

Payments shall be issued to Eligible Claimants who are entitled to receive a *pro rata* distribution of at least $15.00. In determining the amount of the distribution for the purposes of this paragraph, the Distribution Agent may aggregate the accounts held by a Person. Payments will be issued to Eligible Claimants by check.

To carry out the purposes of the Distribution Plan, the Distribution Agent may make adjustments to the Distribution Plan, consistent with the purposes of the Distribution Plan. Any such adjustments must be approved by the Court.

All determinations of the Distribution Agent that are made in accordance with the provisions of the Distribution Plan are final and not subject to appeal.

**B. Identification of and Notice to Claimants**

1. Pre-Qualified Claimants

The Distribution Agent has identified Pre-Qualified Claimants through the review and analysis of the records of the Watermark Entities.

Within 30 days following the entry by the Court of an order approving the Distribution Plan, the Distribution Agent shall send by United States First Class Mail, a Claims Packet to those Pre-Qualified Claimants known to the Distribution Agent.

For Pre-Qualified Claimants, the Claims Packet shall also include a notice that indicates that they have either been determined to be: (a) eligible for a distribution from the Watermark Fair Fund and the amount of their Eligible Loss; or (b) ineligible for a distribution from the Watermark Fair Fund. This notice shall also inform Pre-Qualified Claimants of the rationale for such determination and of their option to submit, by the Claims Bar Date, a Proof of Claim Form seeking the reevaluation of the findings.

2. Potentially Eligible Claimants

To ensure that all injured investors are identified, and have the opportunity to file a claim, the Distribution Agent shall, at the same time he is mailing Claims Packets to Pre-Qualified Claimants, also publish a Public Notice in a Buffalo, NY newspaper (where the fraud occurred) for a length of time he deems appropriate. In addition, the Distribution Agent shall post the

Public Notice and other information relating to the distribution on the Commission's web site, www.sec.gov.

The Distribution Agent shall provide a Claims Packet to Potentially Eligible Claimants upon request. Requests for a Claims Packet may be submitted by mail to Tracey A. Crichlow, Securities and Exchange Commission, 3 World Financial Center, Suite 400, New York, NY 10281-1022, or by email to WatermarkFairFund@sec.gov.

**C. Submission of Proof of Claim Form and Opportunity to Cure Claim**

To avoid being barred from asserting a claim, all Proof of Claim Forms must be submitted to the Distribution Agent by the Claims Bar Date.

The Distribution Agent shall review the claims of Potentially Eligible Claimants and Pre-Qualified Claimants, if any, that are submitted by the Claims Bar Date and make determinations under the criteria identified in this Distribution Plan as to the eligibility of such claimants to recover monies and the amount of money to be distributed from the Fair Fund to Eligible Claimants in accordance with the provisions of the Distribution Plan. The Distribution Agent shall provide to each Pre-Qualified Claimant and each Potentially Eligible Claimant whose claim is deficient in whole or in part, a Claim Deficiency Notice setting forth the reason or reasons why the claim is deficient. The Claim Deficiency Notice shall be provided to affected Pre-Qualified Claimants and Potentially Eligible Claimants not later than 90 days after the Claims Bar Date.

Any Pre-Qualified Claimant and Potentially Eligible Claimant who has received a Claim Deficiency Notice shall have 30 days from the date of the Claim Deficiency Notice to cure any identified deficiencies.

The burden shall be on the claimant to ensure that all documents, including, but not limited to, the Proof of Claim Form, have been properly and timely received by the Distribution Agent.

**D. Payment of Approved Claims**

Within 180 days following the Claims Bar Date, the Distribution Agent shall prepare a list of all Eligible Claimants and the Approved Claim for each Eligible Claimant. The Distribution Agent shall petition the Court for the authority to distribute a specified distributable amount from the Fair Fund to the Eligible Claimants. In recommending such distributable amount to the Court, the Distribution Agent shall hold back a prudent reserve to take into account any federal, state or local taxes payable in connection with the Distribution Plan, and for the fees and expenses of the Tax Administrator.

Upon the Court's approval to distribute the Fair Fund to the Eligible Claimants, the Distribution Agent shall request the Clerk of the Court to distribute the proceeds of the Fair Fund by issuing the distribution checks to Eligible Claimants. The Distribution Agent shall provide the Clerk with all necessary information to effectuate the distribution including the names, addresses and distribution amounts to be disbursed.

The Clerk shall make payments by check to each Eligible Claimant. All payments to Eligible Claimants shall be preceded or accompanied by a communication that includes, as appropriate:

- a statement that the payment is a distribution of the Watermark Fair Fund established by the Court in this action on motion of the Commission, in accordance with Section 308(a) of the Sarbanes-Oxley Act;

- a statement that the tax treatment of the distribution is the responsibility of each recipient and that the recipient should consult his or her tax advisor for advice regarding the tax treatment of the distribution;

- a statement on all checks that checks will be valid for one year; and

- the name of a person or entity to contact if the Eligible Claimant has any questions regarding distribution.

Upon receipt and deposit of the distribution payment by an Eligible Claimant, such Eligible Claimant shall be deemed to have released any and all claims that such Eligible Claimant may have against the Commission, its employees, agents, and attorneys, in connection with the Distribution Plan, and shall be deemed enjoined from prosecuting or asserting any such claims.

Ninety (90) days after the remittance of the checks, the Distribution Agent shall obtain information from the Clerk of the Court concerning checks that have not been negotiated. The Distribution Agent shall then undertake good faith efforts for ninety (90) days to locate and contact the intended recipients of the uncashed checks to ensure that the intended recipients have a reasonable opportunity to participate in the distribution.

After one year from the date on the distribution checks, the Commission staff shall contact the Clerk to obtain information regarding the amount of all uncashed checks. Checks that are not negotiated within the one year period shall be voided, and the amounts shall be placed in a residual account within the Fair Fund. If an Eligible Claimant's check has not been negotiated before the stale date and has been voided, that Eligible Claimant's claim shall be extinguished upon the occurrence of the stale date.

If any portion of the Watermark Fair Fund remains undisbursed, the Distribution Agent shall seek an order of the Court for approval of either: (a) a secondary distribution to Eligible Claimants who have cashed their initial distribution check on a *pro rata* basis, provided the remaining funds in the Fair Fund are sufficient to warrant the additional administrative cost of a secondary distribution; or (b) sending of the remaining funds to the Commission for transfer to the United States Treasury.

Following any secondary distribution to Eligible Claimants, any remaining funds shall be sent to the Commission for transfer to the United States Treasury as described in Section E below.

### E. Fund Termination

The Distribution Agent shall make arrangements with the Tax Administrator for the final payments of taxes and tax-related fees and the Distribution Agent shall submit a final accounting to the Court. The Fair Fund shall be eligible for termination, and the Distribution Agent shall be discharged, after all of the following have occurred: (1) all taxes, fees, and expenses have been paid; (2) the final accounting has been submitted by the Distribution Agent for approval of, and has been approved by, the Court; and (3) any amount remaining in the Fair Fund has been paid to the Commission for transfer to the United States Treasury.

If for any reason funds remain in the Fair Fund six months after the Court has approved the final accounting, the Clerk of the Court shall send the balance remaining, less Court fees, by check to the order of the United States Securities and Exchange Commission. The check shall be delivered or mailed to Enterprise Services Center, Accounts Receivable Branch, 6500 South MacArthur Boulevard, Oklahoma City, OK 73169, under cover of a letter copied to the Commission's counsel of record that identifies the caption and number of this case and the name

14

of this Court, and that indicates that the funds are being paid for deposit by the Comptroller, United States Securities and Exchange Commission, into the United States Treasury, and, upon receipt of such funds, the Office of Financial Management, United States Securities and Exchange Commission, shall remit the funds to the United States Treasury. An additional copy of said cover letter shall be sent to Robert J. Keyes, Associate Regional Director and Chief of Regional Office Operations, U.S. Securities and Exchange Commission, Suite 400, 3 World Financial Center, New York, NY 10281-1022.

## IV. Responsibilities of the Distribution Agent

As a Commission employee, the Distribution Agent shall receive no compensation, other than his regular salary, for his services in administering the Watermark Fair Fund. The Distribution Agent shall be responsible for, among other things, overseeing the administration of the Watermark Fair Fund, preparing accountings, cooperating with the Tax Administrator in providing the information necessary to accomplish income tax compliance, distributing the Watermark Fair Fund to the Eligible Claimant(s) in accordance with the Distribution Plan, and preparing a final accounting.

## V. Responsibilities of the Tax Administrator

The Watermark Fair Fund is a Qualified Settlement Fund ("QSF") within the meaning of the regulations issued under Section 468B(g) of the Internal Revenue Code of 1986, as amended. The Tax Administrator is the administrator of such QSF, for purposes of Treas. Reg. § 1.468B-2(k)(3)(I), and shall satisfy the tax related administrative requirements imposed by Treas. Reg. § 1.468B-2, including, but not limited to:

- Obtaining a tax payer identification number;

- Making timely requests for funds necessary for the timely paying of all applicable taxes, the timely payment of taxes for which the Tax Administrator has received funds, and the filing of applicable returns; and
- Fulfilling any information reporting or withholding requirements required for distributions from the Watermark Far Fund.

The Distribution Agent shall cooperate with the Tax Administrator in providing any information necessary to ensure income tax compliance.

## VI. Payment of Costs, Fees, and Taxes, and Filing of Reports and Accountings

All taxes and the reasonable costs and fees of the Tax Administrator, and costs associated with the administration of the Distribution Plan, including but not limited costs to publish notices, shall be paid from the Fair Fund upon approval of the Court.

The Distribution Agent shall file a final report when his duties are completed. The report shall include, among other things, an accounting of all monies received and distributed in connection with the administration of the Distribution Plan.

## VII. Other Rights and Powers

The Distribution Agent is entitled to rely on all outstanding rules of law and Court orders, and shall not be liable to anyone for any action taken or omitted in connection with this distribution plan except upon a finding by the Court that it, in bad faith or in reckless disregard of its duties under the Distribution Plan, acted or failed to act. The Court retains exclusive jurisdiction over all claims arising in connection with the distribution of the Fair Fund, including, but not limited to, claims against the Distribution Agent asserting liability for violation of any duty imposed under this Distribution Plan.

The Court reserves the right to amend the Distribution Plan from time to time, at the request of the Distribution Agent, or at its own initiative, and retains jurisdiction over this matter

for this purpose and for any and all other matters that may arise under or relate to the Distribution Plan.

**SO ORDERED**.

Dated:	April 30, 2013
	Buffalo, NY

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court